Good morning, Your Honors. May it please the Court, Daniel Saunders for Defendant Appellant Dmitry Fomichev. I'd like to reserve two minutes of my time for rebuttal. Unless the Court has another preference, I'd like to spend my limited time talking about the privilege issue. What about mootness? Excuse me, Your Honor? Mootness? Mootness with respect to... Maybe I don't have the right case. This is the spousal communications privilege issue. Oh, no, I'm sorry. I've got the next case. Okay. All right. The privilege issue is the area where, from both a common law privilege perspective and a Fourth Amendment constitutional perspective, the government is really asking this Court to make new law. Not only for this circuit, but law that's never been recognized. We love to make new law. I know, Your Honor. But there's a reason in this instance. Not necessarily interfering with relations between husbands and wives. It's an area of new law that I think there is a sound reason why this Court and every other court in the country has never gone there. Before we talk about making new law, can we just talk about the old law, the existing law? There are three exceptions to the marital communication privilege, right? Technically, there are two. This Court has spoken of it in cases even since Roberson as being two exceptions. I can sort of address the fine distinction there because I think it is a fine one, perhaps technical. You see I have got my finger on my notes, so go ahead. The two exceptions, Your Honor, that the Court has recognized are the joint participant exception and the exception for crimes committed against a spouse or against the couple's children. There is discussion also of this irreconcilability issue. Right. That, if you look at Roberson and also Byrd, which is the Seventh Circuit case that Roberson talked about, they talk about it not as technically an exception to the privilege, but as negating the foundational elements of the privilege, specifically the existence of a marriage at the time of the communication. Right. And isn't that why that sounds like a really good fit for this situation? Well, there is kind of a factual and a legal response to that, and I think why that doesn't apply in this instance. Factual, Your Honor, is first of all, what are we talking about when we talk about separated? Because Roberson talks about the couple being separated. Well, this couple seems to have separated after their dinner, after they got married and had dinner. Well. And that was the intention from the get-go, right? But did they, Your Honor? They were separated, certainly physically, in that they didn't live together, but separated in the context of Roberson and other cases, I would submit, requires something more than that, because there are actually fully married couples who, for whatever reason, choose not to live together. You bet. What I meant by separated is that, and what I meant by from the get-go is that, I think her testimony is that from the minute they decided to enter into this bargain, the deal was, we'll stay married a year or two. That's it. For a purpose that really doesn't have much to do with what we think of as marriage. Well, first of all, that's part of the problem, is what we think of as marriage, and that's the slippery slope. That's what Judge Reinhart's indicating. We're trying to stay away from not delving into that and not making new law. But with respect to the separation, Your Honor, if the Court looks at Roberson, if the Court looks at Byrd, what the courts talk about in terms of separation and irreconcilable separation is separation as a step toward dissolution of the marriage, separation in the context of steps to terminate the marriage. Right. But if on day one a couple decides to get married for a limited purpose and knows there's just the only question is when they're getting divorced a year or two out, then why isn't this a really good fit? Well, what if the couple changes their mind? In this instance, they stayed married for more than six years. The recorded conversation at issue took place four and a half years into the marriage. Now, certainly the terms of their marriage are not the storybook, I'll love you forever, you'll love me forever, that we think of or like to think of when we think of a couple getting married. But there are any host of reasons why couples might get married for reasons other than that. They could get married for financial security or to legitimize offspring or for health insurance or for tax advantages. Any number of reasons why couples might enter into that contractual relationship apart from love and affection, apart from a sexual relationship. In this instance, they reached a contract, an agreement to get married for certain reasons. He was going to get his green card. She was going to get housing. Her cell phone paid for. That was their agreement. They stayed married under that agreement for, again, six and a half years. And if the court looks at the factors that this court in Roberson and the Seventh Circuit in Byrd looked at, what we're looking at is whether that marriage was over or effectively over so that they really weren't married at the time of the terms, at the time of the communications. Well, it never commenced. Well, it did commence, Your Honor, when they got married, when they performed that marriage and carried it out according to its agreed-upon terms. He covered her lodging. He paid for her cell phone. He used the marriage as a basis to apply for the green card. That's why they got married, and they were still married. They had not taken any steps. I guess that's the question, is if you agree to a relationship that you call marriage and the ghostly formalities of marriage, but all the things you agree to are essentially commercial agreements. There's none of the aspects of marriage that we normally associate with marriage, living together, sexual intimacy, the intent to possibly have children, to live a life together, to plan together, all of those things that we consider marriage, whether that is in fact a marriage or a sham. And if there's no intent to enter in what we think of as a marriage, can we really say that there was a marriage? Well, yes, we can, Your Honor. And, again, I would submit that what we think of as a marriage is a very dangerous question for courts and judges and prosecutors. Oh, no, we decide stuff like that all the time. Why is it dangerous? Well, because what we're looking at here, Your Honor, is not, and, again, under Roberson and under the other cases, we're not looking at whether the marriage was traditional. We're not looking at the reasons they got married. We're not looking at their lifestyle choices, whether they had other boyfriends and girlfriends, whether they lived together, whether they had sex or not. What we're looking at is whether the marriage, according to their concept of the marriage and the reasons why they entered into that marriage, was over or was effectively over. Or never started to begin with, because the thing they agreed to do really was not a marriage. You know, I understand that, you know, that you have an argument, the government has an argument about whether it's over, but the question is two people can't enter a relationship and go through the formalities of marriage. I mean, let's say they meet and somebody pays $2,000. They go through the formalities of marriage, never lived together, and the entire agreement is I'm going to pay you $2,000 and you go through the formalities of applying for a green card. It's all there is. We're not going to live together. We're not going to have a life together. Why are we not justifying and saying that is not a marriage? First of all, Your Honor, the state recognizes it as a marriage. It is a legally binding marriage. It has all the attendant consequences of marriage. That begs the question. Responsible for half her debts. That's exactly the question we have. That's the question we need to answer. You're assuming the conclusion. Why should we recognize it as a marriage? You have two minutes left if you want. I can answer or respond to your questions. No, you can do that, but we won't take it out of the two minutes. Thank you, Your Honor. This will be your last question. Well, there's no doubt, I believe, Your Honor, that that is a legally binding marriage. They are married by the state of California. That marriage is lawful with all the attendant consequences. You say there's no doubt, but I think there is, in fact, doubt. So you have not answered my question. Well, as much as you haven't satisfactorily answered this question. But you're going to have time for rebuttal. All I can say in further attempt to answer is, under the law, if they hadn't been married, there would have been no need to file for and go through their divorce in December 2012. And the government, in this instance, recognized them as married when the government told the wife that if she didn't cooperate, she would be on the hook for half of his tax liability. And that's an acknowledgment by the government that this was a legally valid and binding marriage with all the attendant legal consequences. And when it suited the government to recognize that marriage as lawful for purposes of that threat, which was acknowledged by a stipulation at trial, the government readily acknowledged that this was a lawful and binding marriage. And yet they still felt it appropriate to listen in on conversations, enlist her as an informant to basically act in their stead and elicit incriminating statements from him during the course of that marriage when no steps had been taken at that point to terminate the marriage. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Chris Kendall on behalf of the United States. Do you accept Judge Kuczynski's highly traditional romantic view of marriage? I think that this case involves as being the only type of marriage that should be recognized by the state. I think that there is some danger, of course, in making moral judgments generally about marriages by the courts. Well, what about somebody who marries someone because he doesn't want to be exposed as gay? So he marries someone, they share the same house, they pretend to go to things, but they don't have sexual intercourse. Is that a real marriage? I would say that is a real marriage. And I think that the test that we need to look at here is— And you think it's a real marriage if they agree, I'm going to pay you money, you apply for a green card for me, and then we shake hands and go our separate ways? I do not believe that's a real marriage. Did they go their separate ways or were they continued in this marriage for six years? They went their separate ways. As I said below— Well, let me give you another example. It comes from close to our hearts. An elderly judge who marries his secretary so that she can receive his health benefits. Is that a marriage? A legitimate marriage? According to USCIS, and this is what came out at trial, what makes a marriage legitimate from their purposes, I believe is a good rule, generally speaking, is whether or not the couple intends to spend a life together. There are many formulations we can come up with. I don't think I would not know what this elderly judge did, but my guess was there wasn't any sex. Is sex a necessary part of marriage? I do not believe it is, Your Honor. So you can get married for ulterior purposes other than having sex? There are many reasons why people can get married. But if the sole purpose of the marriage, which is what the jury found here, if the sole purpose of the marriage is to procure an immigration benefit, that's not a marriage. Is there some reason the government didn't argue the crime-fraud exception? Below, Your Honor. So the existing joint-participant exception in Ninth Circuit law does require that they are joint participants at the time of the exception applying. Here, from his perspective, the defendant's perspective, the government would argue she was still a joint participant. However, that is not the existing law. The government has believed and continues to believe that the strongest argument in this case is the argument that you referenced at the start today, which was the Murphy rule, the Roberson rule, which is added here. Wait, I'm sorry. You didn't argue the crime-fraud exception? The government didn't? Below? No, Your Honor. And the reason is because of what the defendant maintained? No, so the reason is that my understanding of the joint-participant exception to the privileges is different from other formulations of the crime-fraud exception for other privileges. As I read the Ninth Circuit law, the joint-participant exception applies to situations where both people are both active participants at the time of the relevance. Wasn't he continuing to pay her rent? He absolutely, from his perspective, was still a joint-participant with her, not only for just sort of an ongoing conspiracy, one could argue, but also possession of a green card unlawfully. Well, and she was maintaining the ruse with the filings of the tax returns, and she was maintaining the ruse up until sort of the first half of the Starbucks interview. Yes, Your Honor. However, at that point, she was cooperating with law enforcement. Well... So as a matter of... No, no, no, I meant Starbucks interview. The first half of the interview with the government agents until they said, hey, your name's on this tax return, and you could be liable. And she said, okay, I want to come clean. Yeah, so everything... Sounds to me like she was participating. Certainly everything up to that point, without a doubt, would fall under the joint-participant exception. Okay, so then your point is that then she'd agreed to wear a wire and then she's not participating anymore in the crime-fraud because she's no longer perpetuating the sham marriage, is that it? That was the problem and why the government didn't argue that theory below. Nevertheless, I think it is a more appropriate argument in front of a circuit court, which is that one can easily extend that privilege to apply to situations where the defendant, from his perspective, still envisions them both as joint participants. Okay, now I understand your answer, and forgive me for taking a minute to get it. But now I understand that. That's been a question that I have. So do you want to talk about the irreconcilable differences exception? Yeah, so as the government has maintained... Do you agree, first, with your opponent that we would have to extend the law? There are no cases that support applying the irreconcilable marriage exception to people who are married for other purposes. Sorry, say that again, Your Honor. There are no cases applying the irreconcilable marriage exception to this type of marriage. This sort of case is a newer... is a new case. It's fresh facts before the court. Okay, I'm not saying we couldn't extend it. But if we want to extend the irreconcilable marriage exception, we certainly are free to do it. I didn't view it as an extension. I'm not talking about the sham. If I misspoke, I didn't mean to reference the sham marriage exception and spousal testimonial privilege. I'm talking about marital communication privilege, and I'm talking about irreconcilable differences. So if I just misspoke, forgive me. And I don't believe you did, Your Honor. I view the separated and irreconcilable differences argument as this. So here, they were at all times separated, and there was never anything to reconcile. So under that test, they're at the bottom of the barrel of the separated... What do you mean there's nothing to reconcile if they were at all times... It's not as if they ever fought. As Judge Kaczynski was saying, there's... it was never a real marriage. And so to even compare it to these legitimate marriages... Why isn't it a real marriage? What makes a marriage that has benefits other than sex a real marriage? You marry to fool the public about things. Is that a real marriage, if you're not really having a romance? I mean, I like the idea of marriage being about romance. I think that's wonderful. But is that something the government decides? No, it is not, Your Honor. Aren't there people who are married and don't live together, but are married for purposes of deception? Your Honor, I think in the example that you're coming up with, where let's say you're trying to hide something about yourself and you're marrying someone for that purpose, if your arrangement with that other person is, this is why I want to get married to you, we're never going to have sex, but we're going to spend a life together, we're going to live in the same house, we're going to share everything... Or we don't live in the same house. Okay, let's say you don't live in the same house. Let's say it's just we're both going to be married together and we're going to spend our lives together in this way. It's different from how some people do it, but at least our goal is to spend our lives together. It's not to file an I-751 petition to commit a crime against the government, which also, just to make a point, this wouldn't even be the court or prosecutor or anyone making a moral judgment here. This is Congress, who committed a crime under 8 U.S.C. 1325C. Why would we have to do any of that inquiry into... I think our case law is very protective. We don't look around reasons for marriage, and there's a lot been written on that, so I don't need to remind you, because I think you've been careful to acknowledge it. But the four factors that we would have to talk about for the irreconcilable differences exception are the duration of the marriage, which is just an objective fact. It doesn't go to motive. The stability of the marriage at the time of the communication. These folks intended to get divorced from the minute they inked the deal, right? Whether the divorce action had been filed and the conduct of the parties since that filing, whether they're living together or not, and whether there's any proposed property settlement. In this case, we don't think there's ever even any acquisition of property. But the reason, if I haven't made it clear, that I'd like to talk about not expanding the law and looking at the applicability of this exception is it seems to me that it's quite consistent with the concerns that our case law expresses about delving into the motivations of a married couple. Because these folks were married under California law. Yes, Your Honor. I believe that this exception is appropriate in this case. Is this the one you're advocating for? Well, in our position, we advocate for all. Certainly, I don't think that there's anything wrong with what the court did below finding a... But that's new law. That's new law. That's new law, but if you look at the reasons that the court articulated, it lines up exactly with all the reasons that we're talking about today. It lies in the face of our case law that talks about being very careful to second-guess the motives, all the many, many different reasons people have for getting married. I guess I would say the same strand flows throughout the sham marriage exception and the Murphy-Robertson rule, which is we always have to go back to this is a narrow privilege to protect marital intimacy, which is sort of offset by administration of justice, true seeking, all of that. The facts in this case are the facts, and I think applying any sort of marital communications privilege to sham spouses talking about their sham marriage flies in the face of that underlying principle. But the irreconcilable marriage exception is the one that we're talking about now. You're not asking us to create an additional exception. The sham marriage exception doesn't apply because that's when you get married in order to avoid testifying. Yes, Your Honor, that's the existing exception, and the government believes that under the Murphy-Robertson separate and irreconcilable rule, that is more than sufficient in this case. I see that I'm now out of time. If the Court has any additional questions, I'm happy to answer otherwise the government submits. Well, I hope you remain romantic. Thank you, Your Honor. Okay. Do you acknowledge any situation where two people go through a marriage ceremony and nevertheless it is not a marriage, it's a sham? Any situation at all. You can make up your own facts. Well, again, what constitutes a sham? If they don't... You make up your own facts. They pay money and they say, you know, I'm going to pay you money, you are going to apply, help me apply for immigration, or you're going to help me file a joint tax return so I can get lower taxes because of that, and we would otherwise have no relationship whatsoever. We don't, you know, and as soon as the deal is done, I take the money, you do whatever paperwork is done, we have no further contact. I would argue, Your Honor, that as long as they are married, for whatever reason and under whatever terms they agree to, they have a right to have confidential communications between them, that's what's recognized by courts, unless there are certain objective factors that show that that marriage... You're not answering my question, and that's up to you. If you don't want to give an answer, that's fine. And I said, are there any circumstances, I mean, is it your position that so long as they go through a marriage ceremony, it is a valid marriage to which the privilege attaches, no matter what their actual relationship is or what the terms are or what happens in that relationship? I think under the law that is correct, Your Honor. I think as long as they have a legally binding marriage, which this unquestionably was under California law, then unless the exceptions that have been recognized by the court apply, which, putting aside irreconcilability for a moment here, the other two clearly don't, then they have a right to those privileged communications. And with respect to irreconcilability, what we look at is objective factors to decide whether the marriage, their marriage, their concept of marriage, not a court's or a prosecutor's, was still in effect or was effectively over. And in Roberson, we look at whether a divorce action had been filed. Here, there hadn't been. You're at the back end. I'm not at the back end. I'm talking about an issue. And your position is that if someone is entered to an actual marriage agreement under state law, they are married no matter what the terms. That's fine. That's correct, Your Honor. The gloss that I would put on it is that my position is that it's not a court's role or a prosecutor's role to determine whether that marriage is real. We'll see about that. But your position is that if the entrance to the ceremony is valid, period. Until and unless they have taken steps to terminate that marriage. Right. It can terminate at the back end. But going in, it's a valid marriage. I understand your answer. And in this instance, Your Honor, again, no divorce action had been filed. No one had talked to a divorce lawyer.  I think we know the facts. Okay. Thank you very much. Thank you, Your Honor. Thank you all for a very interesting argument. Okay. Next case is...
judges: Reinhardt, Kozinski, Christen